**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DERRICK HATCHETT,

                Plaintiff,

          v.

WEXFORD HEALTH SOURCES, Inc.,
GHALIAH OBAISI, as the Independent
Executor of the ESTATE OF DR.
SALEH OBAISI, M.D., Deceased,
RANDY PFISTER, and DON MILLS,

                Defendants.

No. 17-cv-06060

Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

Plaintiff Derrick Hatchett, an inmate at the Stateville Correctional Center, noticed a growth on the back of his neck, which he believed was the cause of his severe headaches and other health problems. Despite routine monitoring and medical attention of the lipoma, including its surgical removal, Plaintiff sued Wexford Health Sources, Inc. ("Wexford"), the provider of medical services for inmates at Stateville, and the individuals who oversaw or provided medical care; Saleh Obaisi, M.D. (Stateville's Medical Director),[1] Randy Pfister (the Warden), and Donald Mills (Stateville's Health Care Unit Administrator). Count I alleges that Defendants violated Hatchett's Eighth Amendment rights by providing inadequate access to

---

[1] Dr. Obaisi, now deceased, is represented by Ghaliah Obaisi, the executor of Dr. Obaisi's estate.

medical care. Count II alleges Intentional Infliction of Emotional Distress. Count III alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act against Defendant Wexford.

Before the Court are Defendants' motions for summary judgment. For the reasons that follow, the Court grants summary judgment to Defendants on Count I and relinquishes its supplemental jurisdiction over the remaining state law claims.

## I.    BACKGROUND

During the relevant times referred to in the Amended Complaint, Plaintiff Derrick Hatchett was incarcerated at the Stateville Correctional Center ("Stateville"). (Dkt 89 ¶ 1.) In or about June of 2013, Hatchett noticed a growth on the back of his neck, which he believed was the cause of his severe headaches and other problems. (Dkt. 89 ¶ 4.) In October 2014, Hatchett began filing grievances about his headaches and the growth, which was, at the time, "pinky finger nail size." (Dkt. 80 at 87.) On May 12, 2015, Hatchett was seen by a nurse regarding the mass and stated that the lump had gotten bigger. (Dkt. 87 ¶ 11.) On May 20, 2015, Hatchett was seen by a Physician Assistant, who noted that the mass was soft and not tender, and that Hatchett should follow up if the lipoma grew bigger in size. (*Id.* ¶ 12.) On June 4, 2015, Hatchett's mass was assessed by a medical doctor ("M.D."), who diagnosed it as a lipoma. (*Id.* ¶ 14.) The M.D. discussed the lipoma with Defendant Saleh Obaisi, M.D. ("Dr. Obaisi"), who continued to monitor the mass but determined that no further action was required. (*Id.*)

Hatchett was examined two more times by nurses, once in December 2015 and again in January 2016, before being directly examined by Dr. Obaisi on February 9, 2016. (*Id.* ¶¶ 15–18.) Dr. Obaisi noted that the mass was soft and that the posterior of Hatchett's neck was stable, and he scheduled Hatchett for a follow up in six months, which occurred on August 2. (*Id.* ¶¶ 18–19.) Hatchett then received an x-ray. (*Id.* ¶ 19–20.)

Dr. Obaisi examined the mass again the following January and February in 2017, and noted that it was soft, non-tender, and one and a half inches in diameter. (*Id.* ¶¶ 21–23.) Hatchett complained of pain and headaches, so Dr. Obaisi prescribed Colace and Calcium, and Hatchett was later approved through the collegial review process to be seen at UIC regarding the lump. (*Id.* ¶¶ 23–24.) On May 20, 2017, Hatchett was seen by a nurse regarding the mass and indicated on a scale of 1-10, his pain was a five or six, and he was prescribed more pain medication. (*Id.* ¶¶ 25–26.)

Throughout these examinations, Hatchett filed multiple grievances asking to see a specialist to rule out that the lipoma was cancerous, which Defendant Randy Pfister, Stateville's Warden, reviewed and denied. (*See generally* Dkt. 80.) Persistent in his symptoms and complaints, Hatchett was seen at the General Minimally Invasive and RoboticSurgery Clinic at UIC Hospital for an evaluation, and the doctor recommended that the mass be removed. (Dkt. 87 ¶ 31.) The doctor also told Hatchett that the lipoma was likely not the cause of his headaches. (*Id.*) The surgery was approved, and Hatchett's lipoma was removed on September 28, 2017. (*Id.* ¶ 33.) Hatchett was seen once on September 28 and again on October 10 by a doctor

regarding the surgical removal of the lipoma, and the doctor noted the wound was "healing well." (*Id.* ¶ 34.)

Dissatisfied with his care, Hatchett brought the present complaint alleging, in part, that Defendants Dr. Saleh Obaisi, M.D., Randy Pfister, Donald Mills, and Wexford Health Sources, Inc., violated the Eighth Amendment and acted with deliberate indifference by "ignoring" Hatchett's request to see a specialist. (Dkt. 17 ¶ 3.) Defendant Dr. Obaisi served as Stateville's Medical Director, Defendant Randy Pfister was its Warden, and Defendant Donald Mills was Stateville's Health Care Unit Administrator at the time of the alleged injury. (Dkts. 87 ¶ 4; 89 ¶ 2.)

Hatchett alleges in Count I that the Defendants violated his Eighth Amendment rights by providing inadequate access to medical care. (Dkt. 17 at 5.) Count II alleges that Defendants engaged in a pattern of intentional misconduct causing Hatchett prolonged physical and emotional distress. (*Id.* at 6.) Count III alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act against Wexford Health Sources. (*Id.* at 7.)

Defendants moved for summary judgment on each count. (Dkts. 72; 77.) As to Count I, the Court finds that there is no genuine dispute as to any material fact and that Defendants are entitled to judgment as a matter of law. In view of that outcome, the Court relinquishes jurisdiction as to Hatchett's remaining state law claims (Count II and Count III).

4

## II.  STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III.  DISCUSSION

To prevail on an Eighth Amendment claim for deliberate indifference to a serious medical need, Hatchett must show that he: (1) suffered from an objectively serious medical condition; and (2) that Defendants were deliberately indifferent to a risk of serious harm from that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

Defendants argue that Hatchett cannot demonstrate that they violated his Eighth Amendment rights because he does not have an objectively serious condition and because Defendants were not deliberately indifferent (Dkts. 75 at 2–8; 77-2 at 3–11). This argument is addressed below.

### A.     Serious Medical Condition

Hatchett's Section 1983 count hinges on the recognition that his lipoma is a serious condition. A "serious medical need" is hardly "self-defining," *Whitehead v. Mahone*, No. 10 cv 1027, 2011 WL 3241352, at *5 (C.D. Ill. July 29, 2011) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1370 (7th Cir. 1997)), but obviously, if a condition is "life threatening or poses a risk of . . . lingering disability if not treated at once," it constitutes a serious need. *Id.* (citation omitted). Medical needs, however, need not rise to this level to be considered serious. *Gutierrez,* 111 F.3d at 1370.

As the Seventh Circuit has recognized, a "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious even a layperson could easily recognize the necessity for medical treatment by a doctor. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *see Verser v. Elyea*, 113 F. Supp. 2d 1211, 1214 (N.D. Ill. 2000). Both the Seventh Circuit and other courts in this District have declined to categorically determine whether lipomas constitute a serious medical need, and Defendants argue that Hatchett has failed to demonstrate his is any more serious than those previously considered, pointing both to the lipoma's benign diagnosis and the lack of disruption to Hatchett's daily life. *See Whitehead*, 2011 WL 3241352, at *6 (granting summary judgment that lipoma was not serious);

6

*Flores v. Welborn*, 119 F. App'x 6 (7th Cir. 2004) (affirming the same); (Dkt. 77-2 at 3–4.)

In *Whitehead v. Mahone*, for instance, the plaintiff did not contest the medical classification of the lump as a lipoma, but stated that the plaintiff suffered migraines, dizziness, and blackouts due to the condition, which mirror Hatchett's grievances. *Whitehead*, 2011 WL 3241352, at *6. The *Whitehead* defendants were nevertheless entitled to summary judgment, as the plaintiff failed to adduce any evidence beyond his own assertions of pain and discomfort to support the notion that his lipoma was a serious medical problem. *Id.* The *Whitehead* plaintiff's "complaints about suffering from dizziness and other symptoms—complaints appearing in his medical records and grievance—[were] the only material Plaintiff [had] set forth to establish that his lipoma [was] a serious medical need." *Id.*

This holds true for Hatchett, as his grievance complaints are the only source of evidence that his lipoma disrupted his daily life—and even that contention is contradicted by undisputed record evidence. (*E.g.*, Dkt. 87 ¶ 39) (admitting that "the mass on his neck did not prevent [Hatchett] from applying to jobs at the Prison or attending school.") Hatchett has offered no expert testimony, medical records, or physician notes "tending to show" or corroborate that his lipoma caused serious harm. *See Williams v. Ghosh*, No. 10 cv 0162, 2017 WL 3780315, at *10 (N.D. Ill. Aug. 31, 2017).

Unlike in *Whitehead*, Hatchett had the added benefit of receiving multiple diagnoses that his condition was benign and not, in fact, the cause of his intermittent

7

headaches. (*See, e.g.*, Dkt. 87 ¶¶ 12–14, 31; Dkt. 89 ¶ 14.) Nurses and doctors who oversaw Hatchett's care, including Dr. Obaisi, repeatedly concluded his lipoma was benign. (*See, e.g.*, Dkt. 87 ¶¶ 10–14, 18, 23, 31.) This benign diagnosis was first confirmed by an x-ray and later by Dr. Hassan at UIC, who "examined the patient, discussed the details of the history, findings and management with the house-staff," and "stressed to the patient that [the UIC doctor] not feel that the mass is the cause of his headaches and would recommend that the patient follow up with a neurologist for further evaluation of headaches." (Dkt. 80 at 194.) Hatchett's notion that his lipoma posed a serious threat to his life is not reflected in the record. *See Kendrick v. Frank*, 310 F. App'x. 34, 38 (7th Cir. 2009) (affirming summary judgment where trial court held that the plaintiff's lump was not serious because the evidence that the lump was anything more than a "harmless lipoma" was "lacking.")

Although all evidence has been taken in the light most favorable to Hatchett, Hatchett fails to demonstrate that the lipoma constituted an objectively serious medical condition. As a result, Count I fails at the outset.

### B.    Deliberate Indifference

Even if Hatchett was able to show a triable issue as to whether he suffered from an objectively serious medical condition, the record fails to show that any Defendant acted with deliberate indifference. The deliberate-indifference standard "requires a 'sufficiently culpable state of mind,'" and a healthcare provider "cannot be liable unless he 'knows of and disregards an excessive risk to inmate health or safety.'" *Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019) (quoting *Farmer v.*

8

*Brennan*, 511 U.S. 825, 834, 837 (1994)). This is essentially a criminal recklessness standard. *Id*. at 915. As such, negligence, even gross negligence, does not violate the Constitution. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976)). Defendants' deliberate indifference must instead be "unnecessary" and "wanton." *Ghosh*, 2017 WL 3780315, at \*6 (N.D. Ill. Aug. 31, 2017) (quoting *Estelle*, 429 U.S. at 104).

That said, "a plaintiff does not need to show that the official intended harm or believed that harm would occur." *Id.* at \*7 (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Rather, a reasonable jury can infer a defendant's subjective deliberate indifference based upon evidence that the defendant ignored a request for treatment, substantially departed from accepted professional standards, failed to follow advice from a specialist, persisted in an ineffective course of treatment, or inexplicably delayed treatment. *See Petties*, 836 F.3d at 729–30; *see also Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("[A] doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment.") (internal quotation omitted). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *McGowan*, 612 F.3d at 640.

### 1.    *Randy Pfister*

Hatchett's allegations of deliberate indifference against Defendant Pfister essentially reflect his frustration that Pfister relied on the medical staff's

representations of care. On August 17, 2016, for instance, Pfister denied Hatchett's grievance to see a specialist, writing that "[t]he offender has been seen several times regarding his issues. He was seen 8/2/16 and 8/18/16 and has a follow up in 3 months." (Dkt. 80 at 12.) Pfister noted that there was "[n]o mention of sending him out at [the] time." (*Id.*) Denying another grievance filed on August 12, 2017, in which Hatchett complained of an episode of lightheadedness, dizziness, and vomiting on August 8, Pfister noted that Hatchett was seen by Dr. Obiasi, given an injection and pepsic, and was admitted to the infirmary. (*Id.* at 18.) After Hatchett complained of his Naproxen side effects, he was prescribed an alternative, Excedrin. (*Id.* at 4, 18.)

Without refuting that he did, in fact, receive the care described in his grievances, Hatchett doubts Pfister's deference to the representations made by medical staff, asking "[w]hat were those representations exactly? When were they made? By whom?" (Dkt. 88 at 5.) Meanwhile, it is undisputed that Hatchett was being seen by medical professionals and sent for outside care within the relevant timeframe. (Dkt. 87 ¶¶ 6–36.)

Pfister responded to Hatchett's grievance complaints. (*E.g.*, Dkt. 80 at 12, 18.) Those responses established that Hatchett was being treated for the mass on his neck. As a nonmedical administrator, Pfister is entitled and generally obligated to defer to the judgment of jail health professionals absent a reason to believe mistreatment is afoot. *Berry*, 604 F.3d at 440. Since Hatchett was under the care of medical professionals at the time of his allegations, Pfister was justified in believing that Hatchett was in capable hands. *See also Johnson v. Doughty*, 433 F.3d 1001,

1011, n.9 (7th Cir. 2006) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)) ("Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.")

There is no evidence that Defendant disregarded an excessive risk to Hatchett's health. To the contrary, the record established that medical professionals were regularly seeing him and that his grievances were regularly considered. Hatchett cannot establish that Pfister acted with deliberate indifference, and summary judgement must be entered in Pfister's favor.

### 2. *Donald Mills*

Hatchett's complaints of deliberate indifference against Defendant Donald Mills, Stateville's Health Care Unit Administrator ("HCUA"), mirror those against Pfister, as Hatchett again takes issue that Mills deferred to medical staff "when [he] had the power to intervene." (Dkt. 88 at 10.) Hatchett carries the mistaken belief that Defendant Mills as the HCUA had the ability to override Dr. Obaisi's decision to send him for outside care. (Dkt. 88 at 5–6, 10) ("Defendants failed and refused to intervene . . . Each certainly could have.") As the HCUA, Mills was not responsible for determining whether inmates are sent for outside treatment. (Dkt. 87 ¶ 40.) Mills also did not have the authority to override a doctor's decision regarding his or her treatment of inmates. (*Id.* ¶¶ 40–41.) Hatchett disagrees with when he should have been externally evaluated, but there is no evidence that Mills ignored Hatchett's requests with deliberate indifference. (*Id.* ¶ 42); *Carter v. Ameji*, No. 09 cv 2247, 2011 WL 3819740, at *2, *6 (C.D. Ill. Aug. 26, 2011) (health care unit administrator was

11

not deliberately indifferent to prisoner's medical needs because she had no authority to refer him to outside treatment.) Moreover, as described above, since Hatchett was under the care of medical professionals at the time of Hatchett's allegations, Mills was justified in believing that the prisoner was in capable hands.

### 3. *Dr. Obaisi*

The undisputed facts show that Dr. Obaisi, the only medical person with control over Hatchett's condition, was not deliberately indifferent. A prison official "must respond reasonably to a known risk of harm, but negligence or even gross negligence is not enough to show a constitutional violation." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018) (citing *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)). This standard requires Hatchett to show evidence suggesting "something approaching a total unconcern for the prisoner's welfare in the face of serious risks," *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006), or "a conscious, culpable refusal to prevent harm." *Dunmore v. Fahim*, No. 11 cv 1000, 2012 WL 895431, at *4 (S.D. Ill. Mar. 15, 2012), *aff'd sub nom. Dunmore v. Godinez*, 551 F. App'x 273 (7th Cir. 2014) (citations omitted).

Hatchett argues that Dr. Obaisi acted with deliberate indifference relative to evaluations and treatment for Hatchett's lipoma, arguing he should have been referred to a specialist to ensure that his lipoma was not cancerous sooner than Dr. Obaisi allowed. (Dkt 90 at 3.) It is well established, however, that an inmate's subjective and lay opinion about what his medical treatment should have been is not sufficient to defeat summary judgment. *See Lyons v. Aguinaldo*, No. 15 cv 4668, 2018

12

WL 3861546, at *5 (N.D. Ill. Aug. 14, 2018) (granting summary judgment for physicians where Plaintiff "presented no evidence beyond his own subjective testimony that surgery was medically necessary at an earlier date.").

When an inmate brings a deliberate indifference claim based upon delay of medical treatment, the inmate not only must prove the objective and subjective components of his claim, but also must offer "verifying medical evidence" that the delay caused harm. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007). Verifying medical evidence is evidence that "tends to confirm or corroborate a claim that the delay was detrimental." *Ghosh*, 2017 WL 3780315, at *7 (citing *Liefer*, 491 F.3d at 715). There is no verifying medical evidence in this case to dispute any of the treatment decisions by Dr. Obaisi, and the evidence corroborating Hatchett's construction of his ailments is himself, as his evidentiary support consists of citations to his own statements. (*See generally* Dkts. 88; 90).

On the other hand, the undisputed evidence reveals the same story: the lipoma was benign and lacked urgency until it appeared to be changing in size, which was a diagnosis affirmed by a range of medical professionals who aided Dr. Obaisi in overseeing Hatchett's care. (*See, e.g.*, Dkt. 87 ¶¶ 8–34.) Dr. Hassan at UIC noted explicitly that she "agree[d] with the evaluation and management" plan of Dr. Obaisi. (Dkt. 80 ¶ 194.) There is nothing in the record that suggests Dr. Obaisi's "wait and see" approach was "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." (Dkt. 87 at 19 ¶ 3); *Collins*, 462 F.3d at 762. The

13

undisputed record shows that Dr. Obaisi examined Hatchett and obtained approval

from Wexford to have Hatchett sent for an offsite evaluation with general surgery at

UIC. (Dkt. 87 ¶ 18–25.) Before this point, Hatchett's lipoma had been assessed as

benign and regularly monitored. (*Id.* ¶¶ 9–15.) As such, there is no basis for any claim

of deliberate indifference against Dr. Obaisi.

### 4. *Wexford*

Summary judgment is also warranted in favor of Wexford as to Count I. *Monell*

*v. Dept. of Social Servs. of City of New York* instructs that private corporations like

Wexford acting under color of state law may only be held liable for injuries resulting

from unconstitutional policies or practices. 436 U.S. 658, 690–91 (1978). To hold

Wexford liable under Section 1983 and *Monell*, Hatchett "must demonstrate that

[Wexford's] 'official policy, widespread custom, or action by an official with policy-

making authority was the 'moving force' behind his constitutional injury." See *Smith*

*v. Wexford Health Sources, Inc.*, No. 15-cv-3730, 2017 WL 5464367, at *6 (N.D. Ill.

Nov. 14, 2017) (quoting *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016)

(citation omitted)). Hatchett must offer " 'competent evidence tending to show a

general pattern of repeated behavior (*i.e.*, something greater than a mere isolated

event.)' " *Id.* at *6 (quoting *Daniel*, 833 F.3d at 734). Hatchett must also "show more

than the deficiencies specific to his own experience." *Id.* at *6–7 (granting summary

judgment in favor of Defendant Wexford and finding "no evidence" supporting an

unconstitutional policy) (internal quotation omitted).

As Defendants note, there is "not a scintilla of evidence" in this case that Wexford maintained any unconstitutional policy or widespread practice, the existence of which caused Hatchett harm. (Dkt. 72 at 9.) To the contrary, the record indicates that Hatchett suffered no constitutional injury *at all*, having received consistent care, an external diagnosis, and his surgery approved. There is no basis for concluding that Wexford's employee, Dr. Obaisi, or any Wexford provider involved in Hatchett's care, engaged in any wrongful conduct. There is no direct or indirect evidence to support any claim that Wexford implements unconstitutional measures relative to its care of Hatchett or patients at Stateville at-large. Accordingly, the Court grants summary judgment in favor of Wexford.

*        *        *

Because Defendants are entitled to summary judgment on Hatchett's constitutional count, the only counts remaining are those for intentional infliction of emotional distress and for violations of Illinois's commercial fraud act. As the Court's jurisdiction is supplemental and based on Hatchett's constitutional claim, the Court relinquishes jurisdiction on Counts II and III for state law violations. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) ("[T]he district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims.") This dismissal is without prejudice to Hatchett's refiling in state court if he so chooses. 28 U.S.C. § 1367(d); *see Buford v. City of Chi.*, No. 08 cv 214, 2009 WL 4639747, at \*5 (N.D. Ill. Dec. 3, 2009) (citing *Jinks v. Richland Cnty.*, 538 U.S. 456, 462–63 (2003) for the proposition that

15

the state limitations period is tolled during the pendency of the federal suit if supplemental state claims are dismissed after dismissal of the federal claims).

## IV.    CONCLUSION

Defendants' motions for summary judgment are granted. The Court relinquishes jurisdiction over the state-law claims in Count II and Count III.

SO ORDERED in No. 17-cv-06060.

Date: September 30, 2024

_____

JOHN F. KNESS
United States District Judge

16